## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LUCIANO P. GUERRA,

        Petitioner,

v.                                     No. CV 13-734 LH/CG

JAMES JANECKA, Warden, and
GARY K. KING, New Mexico
Attorney General

        Respondents.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Petitioner Luciano P. Guerra's *Petition Under 28 U.S.C § 2254 for Writ of Habeas Corpus by a Person in State Custody* ("Petition"), filed on December 2, 2013, (Doc. 12), and *Respondents' Answer to Pro Se Petitioner Luciano P' Guerra's Petition for Writ of Habeas Corpus (28 U.S.C. § 2254) [Doc. 12]* ("Answer"), filed on January 2, 2014, (Doc. 14). Petitioner asserts three grounds for habeas corpus relief, though the Court considers grounds two and three together. Respondents James Janecka and Gary K. King contend that Petitioner is not entitled to federal habeas relief. (Doc. 14 at 2). After a thorough review of the state court record, the Court agrees with Respondents and recommends that the Petition be dismissed with prejudice.

### I.    Factual and Procedural Background

Petitioner was convicted of the murder of Andrew Gama. (Ex. A).[1] Mr. Gama was stabbed multiple times when an altercation occurred between his group of friends

---

[1] The factual background is drawn from the appellate briefs filed by the parties with the New Mexico Supreme Court on direct appeal. Respondents submitted the state court record with their Answer. (Doc.

and Petitioner's group of friends.  (Ex. G at 8, 14).  Both Mr. Gama and Petitioner had consumed alcohol during the evening preceding the incident, each with a group of friends; these two groups came together in the parking lot of an apartment complex and fought each other. (Ex. G at 8).  At trial, there was testimony that there was some history of friction between various individuals in the two groups, including between Petitioner and Mr. Gama.  (Ex. G at 8-11).  Witnesses reported seeing Petitioner and Mr. Gama fighting each other, verbally and physically, though no one witnessed either man on the ground.  (Ex. G at 11).  When the groups dispersed, Mr. Gama was unable to reach the car by himself; his friends then drove him to the hospital.  (Ex. G at 11).

Petitioner and his friends returned to the apartment they had been hanging out in.  (Ex. G at 11).  Petitioner said "I think I stabbed that fool seven or eight times.  I stabbed that fool."  (Ex. G at 11).  He also told a witness that he stabbed Mr. Gama because he had been "jumped" by more than one person.  (Doc. 14, Ex. G).  One witness who saw Petitioner after the fight did not observe any blood on his clothes; another witness described Petitioner as behaving "[f]ine, like nothing, like high fiving each other."  (Ex. G at 11-12).

Mr. Gama was stabbed thirteen times on the left side of his body, but sustained no injuries to his hands or arms.  (Ex. G at 13-14; Ex. I at 13).  His injuries were consistent with injuries that would be inflicted by a single edged knife, but it was not determined whether all injuries were inflicted by the same knife.  (Ex. G at 14).  Some witnesses reported seeing Petitioner playing with a knife early in the evening; he told witnesses that he needed it for protection.  (Ex. I at 9-10).  Petitioner was asked to put

---

14, Ex. A – Q).  Respondents also submitted an audio recording of the trial, which the Court has reviewed and is cited as "Transcript."

the knife away; he complied with the request and no one reported seeing the knife again. (Ex. I at 9-10). Police were unable to find the knife or the clothes that Petitioner was wearing the night of the incident. (Ex. I at 14).

At trial, Petitioner's attorney argued that he acted in self-defense. (Transcript: 2/10/11 at 10:12:09-10:26:20). Jurors were given instructions on first degree murder, second degree murder, and voluntary manslaughter in addition to self-defense. On February 10, 2011, after a four-day jury trial, Petitioner was convicted of murder in the first degree (willful and deliberate) and tampering with evidence.[2] (Ex. A).

Petitioner appealed his convictions to the New Mexico Supreme Court on May 4, 2011. (Doc. 14 at 2). In his appeal, Petitioner raised several issues, including whether there was sufficient evidence to support his tampering with evidence conviction, whether his trial counsel was ineffective because certain exhibits were not provided to the jury, and whether his Fourteenth Amendment rights were violated when the jury returned a verdict of guilty in light of contrary evidence.[3] (Ex. G). In support of the latter argument, Petitioner argued that there was no showing of deliberate intention because the prosecution had not rebutted testimony that Petitioner was "jumped" and that there was reasonable doubt because there were no witnesses to the stabbing. (Ex. G at 22).

On August 9, 2012, the New Mexico Supreme Court issued an opinion upholding Petitioner's first degree murder conviction and reversing his conviction for tampering with evidence. (Ex. K). In upholding Petitioner's conviction for first degree murder, the New Mexico Supreme Court found that any error in failing to provide two exhibits to the

---

[2] The conviction for tampering with evidence was reversed by the New Mexico Supreme Court on August 9, 2012, and the *Second Amended Judgment, Sentence and Commitment* was issued on October 1, 2012. (Ex. C; Ex. K).
[3] Petitioner raised additional trial errors that he argues were violations of his Fourteenth Amendment rights, but these errors have not been raised in this Petition.

jury was harmless and his attorney was not ineffective.   (Ex. K at 5-7).  The court

considered Petitioner's claim that the jury ignored evidence that tended to show that he

did not deliberate before killing Mr. Gama.  (Ex. K at 7-8).  After pointing out that a jury

may reject a defendant's version of the facts, the court reviewed the evidence

supporting the verdict.  (Ex. K at 7-8).

Citing New Mexico's uniform jury instructions and case law, the court noted that

deliberate intent requires a calculated judgment to kill, which can be arrived at in a short

period of time, and a jury may infer intent from circumstantial evidence.  (Ex. K at 7).  At

trial, the prosecution argued that Petitioner had held Mr. Gama's arm above his head,

leaving his chest exposed and unable to defend himself; the medical evidence

supported this contention.  (Ex. K at 8).  Additionally, the prosecution presented

evidence that Mr. Gama was stabbed thirteen times, which supported a finding of

"overkill."  (Ex. K at 8).  Finally, the court mentioned Petitioner's statement that he

"stabbed that fool seven or eight times" as supporting an inference that he expressed no

remorse.  Based on these facts, the court concluded that there was sufficient evidence

to support his conviction for willful and deliberate murder.  (Ex. K at 8).

On February 20, 2013, Petitioner filed a *Petition for Writ of Habeas Corpus* with

the Ninth Judicial District Court in the State of New Mexico.  (Ex. L).  Petitioner alleged

a violation of the Sixth Amendment on the basis that his trial counsel was ineffective, a

violation of the Sixth Amendment on the basis of prosecutorial misconduct, and a

violation of the Fourteenth Amendment on the basis that there was insufficient evidence

to support a conviction of first degree murder.

In support of his claim that his trial counsel was ineffective, Petitioner alleged that his attorney failed to conduct a pre-trial investigation that would have, allegedly, revealed "several proper and appropriate lines of defenses" such as intoxication and self-defense.  (Ex. L at 9-15).  Petitioner's claim of prosecutorial misconduct was based on his contention that the prosecution withheld exculpatory evidence that Petitioner was drinking during the evening of the incident and had been provoked by Mr. Gama.  (Ex. L at 16-18).  Petitioner supports his third claim with many of the same arguments and facts, arguing that he was entitled to a self-defense jury instruction and that that "there was obviously insufficient evidence for which to support a conviction for first degree murder, however, there was sufficient evidence for an instruction on self-defense based on provocation."  (Ex. L at 19-20).

In a *Decision and Order of Summary Dismissal*, Petitioner's *Petition for Writ of Habeas Corpus* was dismissed.  (Ex. M).  Noting that the New Mexico Supreme Court had reviewed Petitioner's claims regarding the sufficiency of the evidence and prosecutorial misconduct, and that Petitioner had not presented any new factual issues, the state court found that Petitioner could not seek post-conviction relief "for issues raised on appeal that were decided on the merits against the defendant."  (Ex. M at 1-2).  The state court acknowledged that Petitioner had presented additional claims of ineffective assistance of counsel that had not been presented to the New Mexico Supreme Court, but found that "Petitioner's allegations are not sufficient to establish conduct which was not that of a reasonable, competent attorney."  (Ex. M at 2).  The state court found that Petitioner was not entitled to relief as a matter of law.  (Ex. M at

2).  Petitioner's *Petition for Writ of Certiorari* was summarily denied by the New Mexico Supreme Court.  (Ex. O).

In the instant Petition, Petitioner raises largely the same claims that he raised before the state court.  He argues that his trial counsel was ineffective because he failed to perform a pre-trial investigation to discover Petitioner's use of alcohol during the evening of the incident, which would have provided the support for an intoxication defense.  (Doc. 12 at 6-7).  Petitioner also contends that the prosecution was in possession of evidence that tended to undermine its theory that the murder was deliberate, such as the fact that Petitioner had consumed alcohol and was provoked. (Doc. 12 at 9-10).  Finally, Petitioner asserts that he was entitled to a jury instruction on the theory of self-defense because he was provoked by Mr. Gama and there was insufficient evidence to demonstrate that he had the requisite state of mind for first degree murder.  (Doc. 12 at 10-11).

## II.   Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), the standard of review applicable to a particular claim raised in a habeas petition depends upon how that claim was resolved by the state courts.  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).  If a claim was addressed on the merits by the state courts, the court's review is governed by 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Cullen,* 131 S. Ct. at 1398.

A state court decision is "contrary to" clearly established precedent when: (i) "the state court applies a rule that contradicts the governing law set forth in our cases," or (ii) "the state court confronts a set of facts that are materially indistinguishable from a decision of the [U.S. Supreme Court] and nevertheless arrives" at a different result. *See Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*, at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411; *see also Thomas v. Gibson*, 218 F.3d 1213, 1220 (10th Cir. 2000) (discussing *Williams*).

The standard set out in the AEDPA is highly deferential to the state court decision, which must be given the benefit of the doubt. *Cullen*, 131 S. Ct. at 1398 (citing *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). The petitioner carries the burden of proof, and must rebut by "clear and convincing evidence" the facts found by the state court. *Black v. Workman,* 682 F.3d 880, 892 (10th Cir.2012).

### III.     Analysis

#### a. Insufficient Evidence

Petitioner's allegations of insufficient evidence rely on his argument that he did not have the requisite state of mind to sustain a conviction for first degree murder. (Doc. 12 at 9-12).  Petitioner argues that there was evidence supporting his theory that he was provoked, that he was drinking before the incident, and that none of the witnesses saw him stab Mr. Gama.  (Doc. 12 at 9-12).  Based on these assertions, Petitioner argues that "there was obviously insufficient evidence . . . to support a conviction on first degree murder." (Doc. 12 at 12).  He also argues that there was sufficient evidence for a jury instruction on self-defense, (Doc. 12 at 9-12), however the Court does not consider this argument because the jury was instructed on self-defense. (Ex. P at 5-9).

The Supreme Court has held that evidence is sufficient if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  This standard is applied with "explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16.  The court's inquiry into the sufficiency of the evidence is not whether the court believes that the evidence at trial established guilt beyond a reasonable doubt, but whether, viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. Mullin*, 505 F.3d 1128, 1134 (10th Cir. 2007).

New Mexico defines murder in the first degree as "the killing of one human being by another without lawful justification or excuse . . . by any kind of willful, deliberate and premeditated killing." N.M. STAT. § 20-2-1(A) (1994). A jury must find beyond a reasonable doubt that (1) the defendant killed the victim (2) with the deliberate intention of taking the victim's life (3) in New Mexico on or about the date specified in the criminal information. UJI 14-201 NMRA. A deliberate intention may inferred be from the facts and circumstances of the killing. *Id.* A deliberate intention may be arrived at in a short period of time, but a "a mere unconsidered and rash impulse . . . is not a deliberate intention to kill." *Id.*

The only element of first degree murder at issue in this case is whether Petitioner had the deliberate intention of taking Mr. Gama's life. Taking the evidence in the light most favorable to the prosecution, the Court finds that a rational trier of fact could have found that Petitioner had the deliberate intention to kill Mr. Gama. The evidence presented at trial showed that Mr. Gama was stabbed thirteen times on his left side, and had no defensive wounds to his hands or arms. This suggests that Mr. Gama's arms were pinned in such a way that he could not protect his chest and this undermines Petitioner's contention that he was acting in self-defense throughout the incident. Furthermore, the number of wounds sustained by Mr. Gama strongly suggests that Petitioner intended to kill him

There was also evidence that Petitioner was in possession of a knife that evening and had told people it was for protection; the knife he was reported to have had was consistent with the kind of knife that caused Mr. Gama's wounds. Though the knife was not found, nor did any witnesses testify that they saw Petitioner with the knife during the

fight, a rational juror could believe that not only did Petitioner use the knife to kill Mr. Gama, but that he had anticipated using it.  Witnesses did describe hearing Petitioner say that he stabbed Mr. Gama multiple times, and the prosecution argued that this statement, as well as a witness's testimony that he was acting "[f]ine, like nothing, like high fiving each other," suggested that Petitioner was not remorseful for his actions because he intended them.  This is not an unreasonable inference to make, and it is not improper to infer intent from Petitioner's actions throughout the evening.  *See Torres v. Mullin*, 317 F.3d 1145, 1153 (10th Cir. 2003).

Though Petitioner argues that he was provoked in the attack, no witnesses corroborated his version.  Petitioner's mere assertion that an alternative theory exists is not a basis for habeas relief, particularly as a jury need not accept Petitioner's version of the incident.  *See id.*  Similarly, this Court is not obliged – and in fact cannot – accept Petitioner's version of the facts where the "record of historical facts . . . supports conflicting inferences."  *Jackson*, 443 U.S. at 326.  Under those circumstances, the Court must resolve any conflicts in favor of the prosecution.  *Id.*  In this case, the record supports a finding that Petitioner had the deliberate intention to kill Mr. Gama.

The New Mexico Supreme Court relied on much of the same evidence discussed above in reaching the conclusion that there was sufficient evidence to support Petitioner's conviction for willful and deliberate murder.  As discussed above, the evidence, taken in the light most favorable to the prosecution, is sufficient to support Petitioner's conviction.  Therefore, the decision of the New Mexico Supreme Court is not contrary to, or an unreasonable application, of federal law.  Nor is it an unreasonable determination of the facts presented during the trial.  Petitioner's claim that his

conviction for first degree murder is in violation of his due process rights should be dismissed.

### b. Ineffective Assistance of Counsel

Petitioner contends that his counsel was ineffective because he did not adequately investigate whether an intoxication defense was appropriate in his case. (Doc. 12 at 6).  He argues that such a defense would have been appropriate in this case, and an adequate pretrial investigation would have shown that Petitioner was too impaired to form the specific intent necessary for first degree murder.  (Doc. 12 at 6-7).

To establish ineffective assistance of counsel, a petitioner must satisfy a two-part test.  First, the petitioner must show that counsel's performance was deficient because it fell below an objective standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Second, he must show that counsel's deficient performance prejudiced him by demonstrating that the result of the proceeding would have been different but for counsel's errors.  *Id.* at 687, 694.   To demonstrate that counsel was ineffective, both prongs outlined in *Strickland* must be satisfied.  *See id.* at 687.

In applying the objective standard of reasonableness to counsel's performance, a court gives considerable deference to an attorney's strategic decisions and the attorney "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of professional judgment."  *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690).  The presumption that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonably precise to the extent that reasonable

professional judgments support the limitations on investigation." *Strickland,* 466 U.S. at

691.

When an ineffective assistance of counsel claim that has been decided on the

merits by the state court is raised in a federal habeas petition, the court's review is

"doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). The court must

be deferential to both the state court's determination that counsel's performance was

not deficient and to the attorney's decision in how to represent the client. *See Crawley*

*v. Dinwiddie*, 584 F.3d 916, 922 (10th Cir. 2009). In applying this standard, the question

is whether the state court's determination was unreasonable, not simply incorrect.

*Knowles*, 556 U.S. at 123.

In New Mexico, "a state of intoxication may also negate a required offense

element." *State v. Brown*, 931 P.2d 69, 74. In this case, where Petitioner was charged

with first degree murder, a specific intent crime, the defense of intoxication may have

negated the element of deliberate intention.

The record demonstrates that Petitioner's trial attorney, Michael Garrett, argued

that Petitioner acted in self-defense when he killed Mr. Gama. The defense was

mentioned during the opening statement and closing arguments. Additionally, the jury

instructions include a specific instruction on self-defense. A finding that Petitioner acted

in self-defense would have resulted in an acquittal of all charges, including the lesser-

included offenses of second degree murder and voluntary manslaughter. In contrast, a

finding that Petitioner was intoxicated at the time of the murder would have reduced the

conviction from first degree murder to second degree murder. It was not unreasonable

for Mr. Garrett to make a strategic decision to focus on the defense that could lead to an

acquittal as opposed to the defense that, at best, could result in a conviction of second degree murder or voluntary manslaughter.  Moreover, the record shows that Mr. Garrett was aware that Petitioner had been drinking before the incident, (*see* Ex. G at 9 (citing witness testimony at trial)), and therefore Petitioner's contention that his failure to elicit this fact through adequate investigation is baseless.

In support of finding that Mr. Garrett made a reasonable strategic decision, the Court notes that Petitioner emphasizes throughout his Petition that he was provoked by Mr. Gama.  From this, the Court infers that Petitioner believed that he acted in self-defense and faced with this emphatic insistence on Petitioner's account of the incident, Mr. Garrett did not act unreasonably in pursuing this line of defense rather than one of intoxication.

In light of the Court's finding that Mr. Garrett's pursuit of a self-defense instruction was a reasonable strategic decision, it cannot find that the state court's finding that he was not ineffective was an unreasonable application of federal law.  Therefore, the Court recommends that Petitioner's claim that his trial counsel was ineffective in violation of the Sixth Amendment be dismissed with prejudice.

### IV.    Recommendation

For the reasons discussed above, the Court **RECOMMENDS** that Petitioner Luciano P. Guerra's *Petition Under 28 U.S.C § 2254 for Writ of Habeas Corpus by a Person in State Custody*, (Doc. 12), be **DISMISSED WITH PREJUDICE** and a Certificate of Appealability be **DENIED**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE

14